No. 28,254.

THE EMPIRE COMMISSION COMPANY, *Appellee*, v. S. J. CARLSON,
*Appellant.*

(274 Pac. 1116.)

Opinion filed March 9, 1929.

*Thomas F. Doran, Clayton E. Kline,* both of Topeka, and *David F. Carson,*
of Kansas City, for the appellant.

*C. B. Randall* and *Frank E. Miller,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a broker to recover the price
of corn purchased for his principal, and expenses incurred for the
account of the principal in connection with the purchase. The
verdict and judgment were for plaintiff, and defendant appeals.

On December 31, 1925, plaintiff received an order from Carlson
to purchase for Carlson 10,000 bushels of December corn. Plaintiff
executed the order, and the corn was delivered in elevators in Chi-
cago for Carlson. When the corn was purchased, plaintiff had in
its hands money of Carlson's in the sum of $1,000.53. The corn was
sold for less than the purchase price, and after Carlson was given
credit for the money in plaintiff's hands, there remained due plain-
tiff a balance of the purchase price and various items of expense.

The petition alleged that defendant refused to accept the corn,
but this allegation was stricken out. The petition also alleged that
on or about January 20, 1926, Carlson failed, neglected and refused
to pay for the corn. By amendment the date was changed to
February 20.

Plaintiff's testimony established execution in the customary man-

ner of the order to purchase, including usual confirmations to Carlson, and notification to Carlson on January 9, 1926, of the elevators in which the delivered corn was stored. Thomas J. Myers is manager of the plaintiff. Myers testified that in February Carlson directed sale of a quantity of corn in a certain elevator at a price of 66 cents per bushel, and the sale was made at that price a few days later. Myers requested payment for the corn. Carlson said the corn was not any good. Myers said the corn was all right, and Carlson requested Myers to go to Chicago and look after his interests there. Myers went to Chicago and investigated the situation. The corn was all right, but it was elevator corn, and because of loading-out charges and switching charges, elevator corn could not always be marketed on equal terms with other corn of the same grade. On his return from Chicago Myers reported the facts to Carlson. Carlson requested sale of the corn at prices which Myers could not obtain, and Myers asked Carlson to pay in full. Carlson said to sell out, and Myers sold the corn. The sales made pursuant to Carlson's order to sell out were made on March 2 and March 4. Myers testified he did not request payment until February 20, and testified as follows:

"I did not say Carlson refused on the 20th day of February. He had not refused before that time."

The defense stated in the answer follows:

"Defendant further admits that on December 31, 1925, he requested plaintiff to purchase 10,000 bushels of corn for him at the prevailing price of corn on that date, but said defendant says that he instructed plaintiff to purchase No. 2 corn, which plaintiff failed and neglected to do, and when said plaintiff informed him, on or about the 4th day of January, 1926, that he had purchased 10,000 bushels of No. 3 and No. 4 corn for him, which corn was inferior to No. 2 and of a lower grade, defendant refused to accept said corn or pay for the same."

At the trial Carlson admitted he might have received the usual confirmations which the testimony of plaintiff showed were sent to him. Carlson testified, however, that his order was to purchase No. 2 corn; the corn which plaintiff purchased was No. 3 and No. 4; on January 4 he came to Topeka and talked to Myers about it, and he told Myers he would not accept the corn under any conditions.

On January 9 plaintiff wrote and mailed to Carlson the following letter:

"Mr. S. J. Carlson, Osage City, Kan.: January 9, 1926.

Dear Sir—Please note that your cash corn is in the following elevators in Chicago:

| | | |
|---|---|---|
| 5,000 bu. Wabash Elevator | ........................ | No. 4 mixed |
| 1,270-30 Rock Island A | ........................ | No. 4 yellow |
| 1,571-34 South Chicago C | ........................ | No. 4 mixed |
| 2,139-26 do | ........................ | No. 3 white |

"Yours truly, Empire Commission Co."

At first Carlson testified he did not know whether he received the letter. Afterward he said: "I did not answer the letter I got from Mr. Myers on January 9. I paid no attention to it." The reason Carlson gave for not answering the letter was that he had no corn, and told Myers on January 4 he would not take the corn. Carlson testified further as follows:

"Myers called me over the telephone. I think it was February, near the last part. He asked me what I was going to do about that corn. I said I haven't any corn, Mr. Myers. I told you on the 4th day of January that I wouldn't accept it under any condition. He says, I am going to Chicago, come and go with me. I said I ain't got no business in Chicago, and I haven't got no time to go. Nothing further was said. . . . I never in words and substance directed him or authorized him to go to Chicago in my behalf."

The trouble with Carlson's case was, the jury did not believe his testimony, and returned the following special findings of fact:

"Q. 1. What kind of corn did defendant instruct the plaintiff to buy? A. December corn.

"Q. 2. Did plaintiff buy that kind of corn? A. Yes.

"Q. 3. Did defendant on January 4, 1926, refuse to accept the corn plaintiff purchased December 31, 1925? A. No.

. . . . . . . . . . . . . . .

"Q. 6. Did plaintiff make a trip to Chicago in February, 1926, to see about the corn he had purchased December 31, 1925? A. Yes.

"Q. 7. Did defendant direct or request the plaintiff to make that trip? A. Yes."

These findings of fact dispose of the only defense which Carlson made, and the only remaining question relates to the amount which plaintiff should recover. The court instructed the jury on all phases of this subject. Instruction No. 6 and portions of other instructions relate to what Myers should have done if Carlson refused to accept and pay for the corn.

The jury found Carlson did not refuse on January 4 to accept the corn. He received the letter of January 9 telling him of delivery of the corn in specified quantities at specified elevators. According to

Carlson's testimony, he made no response. He testified he knew the quality of the corn on January 4. According to his testimony, the next conversation he had with Myers concerning the corn was a telephone conversation occurring the latter part of February. Therefore, as a matter of law, he accepted the corn. He was under obligation to reject promptly if he did not desire to accept, and if the elevators in which the corn was stored had burned after January 4, the loss would have been his loss. (*Martin v. Scott Lumber Co.,* 127 Kan. 391, 273 Pac. 411.) Besides that, the findings of fact establish acceptance as a matter of fact, and the instructions to the jury making refusal to accept a factor are now immaterial.

Leaving out of account Carlson's discredited testimony relating to refusal on January 4 to accept the corn, and his discredited testimony relating to the conversation in which Myers was requested to go to Chicago, there was no evidence that Carlson refused to pay for the corn at any time before the last sale was made. Carlson testified he did not ask Myers for the $1,000 he had on deposit, and said: "Mr. Myers never asked me for any money on this corn." Myers' testimony has been stated. Carlson directed sale of one lot of corn at 66 cents. He expressed dissatisfaction with the quality of the corn, and sent Myers to Chicago. Afterwards he directed Myers to sell the remainder of the corn. While the petition alleged that on or about February 20 Carlson failed, neglected and "refused" to pay for the corn, the variance between allegation and proof respecting "refused" is of no consequence. The result is, amount of recovery was governed by a portion of instruction No. 7, reading as follows:

"If you find in favor of the plaintiff, the amount which it is entitled to recover is the prevailing market price of the corn purchased at Chicago on December 31, 1925, from which should be deducted the following: . . . If defendant accepted the corn and plaintiff sold the same on the order of defendant, then there should be deducted the amount plaintiff, by the exercise of reasonable diligence, could have obtained for the corn at the date of such sale or sales by plaintiff, and less the sum of $1,000.53.

"In addition, plaintiff would be entitled to recover any reasonably necessary expense incurred by him in the purchase or sale of said corn, and for holding the same to such time as he should have sold the same, as herein instructed, together with interest on the same from the 4th day of March, 1926."

It is contended that sales made on March 2 and March 4 were below the market quotations for those days. Myers' explanation of

the difficulty in disposing of elevator corn at the market price for the same grades has been given. The special findings and the verdict conclusively show the jury accepted Myers' testimony and followed the quoted instruction.

It is contended the transaction was a gambling transaction. Carlson knew the character of the transaction when he framed his answer, and he did not plead the "welsher's" defense. He testified he did not know whether there was any corn anywhere, he bought for speculation, he bought to hold the corn for awhile to make some money, and he had no intention to take delivery. Carlson's order was in fact received by plaintiff's telegraph operator, Arnold W. Claytor, who testified as follows:

"Q. Give the jury the date and time this order was received, and amount of corn purchased. A. At 1:03 p. m. December 31, 1925, I was called to the telephone.

"Q. Where were you called from? A. Evidently from Osage City, that is where the telegraph [telephone] operator said the call was from, and Mr. Carlson informed me to buy him 10,000 bushels of December Chicago corn at the market.

"Q. Now, that purchase was then made on the last day of December, 1925? A. Yes.

"THE COURT: Tell what Mr. Carlson said. A. He said to purchase 10,000 bushels of Chicago December corn at the market.

"Q. Did you tell him the market? A. Yes, and made it clear to him that December 31 was the last day of the December option, and wanted to be sure he wanted to take delivery on 10,000 bushels of December corn, and he said yes.

"Q. And that was a cash order? A. Yes, fifteen minutes later the market closed, at 1:15; we had twelve minutes to get his corn for him."

In addition to the testimony given by Carlson relating to the bargain which has been noted above, he testified that if he had got the corn he ordered, he would have accepted the bargain; he was willing to take the corn; Myers was supposed to buy in Chicago, and if he had got what he ordered, it would have been left there. Carlson's abstract contains instructions which he requested the court to give. They do not mention illegality of the transaction. On the face of this record, the court was not required to instruct the jury on that subject, and in view of the fact that the special findings and the general verdict rest on actual delivery and acceptance of the corn, the subject is of no importance now.

The foregoing disposes of the merits of the controversy. It is not practicable to discuss Carlson's brief in detail. It presents nothing

requiring a reversal. Plaintiff's cause of action was well established, the defense was disproved, the motion for new trial was properly denied, and the judgment of the district court is affirmed.

HARVEY, J., concurring in the judgment of affirmance.